## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| OFFICER BRIAN ERRINGTON | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 5:21-cv-00118 |
| | : | |
| CITY OF READING, RICHARD | : | |
| TORNIELLI, ERIC DRIESBACH, | : | |
| CHARLES MENGES, and JOHN DOES | : | |
| 1-10, | : | |
| Defendants. | : | |

_____

## **O P I N I O N**
**Motion to Dismiss for Failure to State a Claim, ECF No. 14 – Granted**

**Joseph F. Leeson, Jr.**                                                     **August 31, 2021**
**United States District Judge**

## I.      INTRODUCTION

This matter involves claims by Brian Errington against his former employer, the City of Reading, doing business as the Reading Police Department, as well as several named and unnamed individuals within the department.  Errington brings claims for First Amendment retaliation, violations of procedural and substantive due process, and *Monell*[1] liability. Defendants move to dismiss the Amended Complaint in its entirety.

Following a review of Errington's claims, this Court grants Defendants' motion to dismiss in its entirety.  Errington fails to allege facts sufficient to state a claim under any of his three theories of liability.  Accordingly, Errington's Amended Complaint is dismissed without prejudice.

---

[1]      *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

II.     **BACKGROUND**[2]

Errington was employed by the Reading Police Department for approximately fifteen years.  *See* Am. Compl. ¶ 1.  His duties included investigation of narcotics sales and delivery and investigation of organized and violent crimes.  *See id.*  Errington alleges that the City of Reading, doing business as the Reading Police Department, engaged in several discriminatory acts involving Errington.  *See id.* ¶ 11.

Errington alleges that the issues giving rise to his claims began in November of 2017.  *See id.* ¶ 13.  At that time, Errington was nominated to run for re-election for two positions in the Fraternal Order of Police ("FOP") union.  *See id.*  Despite his nomination, Defendant Sergeant Charles Menges left Errington's name off the ballot.  *See id.*  When Errington complained about his absence from the ballot, he was removed from his instructor position at the Reading Police Academy by Defendant Chief Richard Tornielli.  *See id.*  Errington alleges that his removal from this post was in retaliation for his complaints about being left off the ballot.  *See id.*

In October of 2019, several individuals complained to Errington about Menges' conduct.  *See id.* ¶ 14.  At that time, Menges was president of the FOP union.  *See id.*  Errington's colleagues encouraged him to file a complaint with the FOP.  *See id.*  In October of 2019, Errington filed such a complaint with the FOP.  *See id.*  Errington alleges that Tornielli, who was implicated in one of the incidents complained of, was not interviewed by the Investigative Board.  *See id.*

In November of 2019, Tornielli wrote Errington up for discipline.  *See id.* ¶ 15.  The Chief of Police at that time did not move forward with any discipline against Errington.  *See id.*

_____

[2]     The Background is taken, in large part, from allegations in Errington's Amended Complaint.  *See* Am. Compl., ECF No. 12.

In January of 2020, Tornielli was promoted to Acting Chief of Police, after which he reinstated discipline against Errington for the November 2019 write up. *See id.* Errington alleges that Tornielli disregarded the traditional practice of sending the complaint to the Internal Affairs Office, and instead, Tornielli sent the discipline down directly to Errington. *See id.* After Errington requested a meeting to discuss the discipline, Tornielli withdrew the main charge. *See id.*

On or about January 27, 2019, Defendant Lieutenant Eric Driesbach issued a memorandum entitled "Direct Order 2020-00001" to all Vice Investigators to sign. *See id.* ¶ 16. The Direct Order stated that no member of the Vice Investigators Unit "shall make any comment, remark, suggestion, or innuendo that would reflect negatively or poorly on the Reading Police Department or any member of the Reading Police Department while working in an official capacity as a police officer for the Reading Police Department." *See id.* Errington believed that this Direct Order was being used to "come after the personal conversations of the VICE Investigators," and accordingly, Errington voiced his concern to Driesbach. *See id.* ¶ 17. Errington alleges that Driesbach "did not appear to want to address [Errington's] worries about Direct Order 2020-00001." *See id.* ¶ 18.

Errington then expressed his concerns to Deputy Chief Javier Ruiz. *See id.* Ruiz indicated to Errington that the Direct Order was aimed at "Patrol Officers speaking in front of newly hired Officers and in front of civilians." *See id.* Ruiz reassured Errington that the Direct Order was not directed at private conversations.

On or about March 11, 2020, Tornielli promoted Menges to acting Sergeant. *See id.* ¶ 19. At that time, Menges had not taken the promotional exam and was not on the promotional list. *See id.* Errington was on the list and had taken the exam. *See id.* That same day, VICE

investigators discussed their opinions of the promotion while in the VICE office.  *See id.*  ¶ 20.

On or about March 12, 2020, Driesbach provide all VICE investigators a memorandum that

indicated a complaint was received regarding a violation of Direct Order 2020-00001.  *See id.* ¶

21.  The memorandum requested that each VICE investigator answer a series of questions about

the March 11, 2020 discussions in the VICE office.  *See id.*  On March 12, 2020, Errington spoke

with Driesbach again to express his concern that Tornielli was using Direct Order 2020-00001 to

punish the personal conversations of the VICE investigators.  *See id.* at ¶ 22.  Errington alleges

that Tornielli instructed Driesbach to assist in terminating Errington.  *See id.* ¶ 23.

On or about March 13, 2020, Errington was told to turn over his firearm and badge.  *See

id.* ¶ 25.  He was told to report for administrative duty the following Monday.  *See id.*  On or

about April 10, 2020, Errington learned that Tornielli was moving to have Errington terminated.

*See id.* ¶ 26.  According to Tornielli, Errington had lied in an internal affairs investigation, saying

that "one of his fellow VICE Investigators was a snitch."  *See id.*

In May of 2020, Errington informed his FOP representative that he intended on fighting

his termination.  *See id.* ¶ 27.  Errington asked that the FOP not inform Menges of this decision;

however, Errington's decision to challenge his termination did reach Menges and Tornielli.  *See

id.*  After this, Errington was presented with new charges for termination in addition to those

contained in the original charge for termination.  *See id.*

In June of 2020, Errington met with Human Resources to complain about the alleged

harassment and retaliation.  *See id.* ¶ 30.  While speaking with Human Resources, Errington

became aware that Menges had spoken with Human Resources about bases for terminating him.

*See id.*  Errington alleges that Tornielli altered his reasons for terminating Errington based on the

conversation that Menges had with Human Resources.  *See id.* ¶ 31.  Human Resources indicated

that they were unable to investigate because Errington was already being investigated by the police.  *See id.* ¶ 33.

On or about June 8, 2020, Errington alleges that he was "forced to retire."  *See id.* ¶ 34. Errington alleges that he did not appeal his termination "because it would have been futile."  *See id.*  Errington further alleges that he "had no choice but to retire because he could not risk his pension while pursuing an appeal . . . ."  *See id.* ¶ 36.

Based on these allegations, Errington filed a Complaint on January 10, 2021, alleging claims of First Amendment retaliation (Count I), violation of procedural and substantive due process (Count II), and *Monell* liability (Count III).[3]  *See* Compl., ECF No. 1.  Following a motion to dismiss, Errington filed an Amended Complaint on March 16, 2021.  *See* Am. Compl. On March 26, 2021, Defendants moved to dismiss Errington's Amended Complaint in its entirety.  *See* Mot., ECF No. 14.  Following a series of responses and replies, the motion is ready for review.  *See* Resp., ECF No. 16; Reply, ECF No. 17.

## III.   LEGAL STANDARDS

### A.  Review of Motion to Dismiss

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim.  *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

---

[3]   Errington's Amended Complaint does not specify against which Defendants he intends to assert each claim.  Accordingly, this Court assumes that Errington intends to assert all claims against all Defendants.

(2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted.  *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## B.     Section 1983 First Amendment Retaliation Claim – Review of Applicable Law

A state "may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech."  *Munroe v. Central Bucks Sch. Dist.*, 805 F.3d 454, 465 (3d Cir. 2015) (quoting *Rankin v. McPherson*, 483 U.S. 378, 383 (1987)). "Accordingly, public employees do not surrender all of their First Amendment rights merely because of their employment status."  *Id.* (citing *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)). "Nevertheless, 'the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general.'"  *Id.* (quoting *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will*

*Cnty., Ill.*, 391 U.S. 563, 568 (1968)).  Accordingly, a public employer "may impose speech restrictions that are necessary for efficient and effective operations."  *Id.* at 466 (citing *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 987 (3d Cir. 2014)).

To make out a claim of retaliation under the First Amendment, the public employee must show, "(1) his speech is protected by the First Amendment and (2) the speech was a substantial or motivating factor in the alleged retaliatory action . . . ."  *See id.* (citing *Dougherty*, 772 F.3d at 986).  Where an employee alleges these two elements, the burden then shifts to the employer to show "the same action would have been taken even if the speech had not occurred."  *See id.*

In order for speech to be considered "protected," three elements must be present:

(1) "the employee must speak as a citizen (and not an employee);"

(2) "'the speech must involve a matter of public concern;'" and

(3) "'the government must lack an adequate justification for treating the employee differently than the general public based on its needs as an employer under the Pickering balancing test.'"  *See id.* (quoting *Dougherty*, 772 F.3d at 987).  "When public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  *Garcetti*, 547 U.S. at 421; *see also Morris v. Phila. Housing Auth.*, 487 F. App'x 37, 39 (3d Cir. 2012) ("[C]omplaints up the chain of command about issues related to an employee's workplace duties—for example, possible safety issues or misconduct by other employees—are within an employee's official duties.").

Speech implicates a public concern when

it can be fairly considered as relating to any matter of political, social or other concern to the community, [*Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) ], or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public, [*City of San*

*Diego v. Roe*, 543 U.S. 77, 83–84, 125 S.Ct. 521, 160 L.Ed.2d 410 (2004) (per curiam)].

*Munroe*, 805 F.3d at 467. "[S]peech that relates solely to mundane employment grievances does not implicate a matter of public concern." *Id.* (citing S*anguigni v. Pittsburgh Bd. of Pub. Educ.*, 968 F.2d 393, 399 (3d Cir. 1992)); *see also Miller v. Clinton County*, 544 F.3d 542, 548 (3d Cir. 2008) (finding letter was not protected by First Amendment where it focused on plaintiff's private grievances as an employee, and any statements of public concern were tangential to the private grievance); *Dondero v. Lower Milford Township*, 431 F. Supp. 3d 590, 602 (E.D. Pa. 2019) ("[P]ersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest . . . are matters more immediately concerned with the self-interest of the speaker as employee." (quoting *Palardy v. Township of Millburn*, 906 F.3d 76, 83 (3d Cir. 2018))).

Once a plaintiff establishes that he was speaking as a citizen on a matter of public concern, the *Pickering* balancing test requires courts to weigh "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *See id.* at 466 (quoting *Dougherty*, 772 F.3d at 991). This question of whether "speech is protected by the First Amendment constitutes a question of law." *See id.* (citing *Miller*, 544 F.3d at 548).

If a plaintiff sufficiently alleges speech protected by the First Amendment, the plaintiff must next "show that his protected activity was a substantial or motivating factor" in the defendant's retaliation. *See Falco v. Zimmer*, 767 F. App'x 288, 310 (3d Cir. 2019). "To do so, he must show some sort of 'causal link' between the protected speech and the adverse

employment action." *Id.* (citing *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir.

2003)). "[A]t this motion to dismiss stage, [a plaintiff] must only produce some evidence, direct

or circumstantial, of this element that is 'enough to raise the right to relief above the speculative

level.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "[A] suggestive temporal proximity between

the protected activity and the alleged retaliatory action can be probative of causation . . . ." *Id.*

(quoting *Thomas*, 351 F.3d at 114). However, "[e]ven if timing alone could ever be sufficient to

establish a causal link, . . . the timing of the alleged retaliatory action must be unusually

suggestive of the retaliatory motive before a causal link will be inferred." *Id.* (quoting *Estate of*

*Smith v. Mascaro*, 318 F.3d 497, 512 (3d Cir. 2003)).

### C.      Procedural and Substantive Due Process Claim – Review of Applicable Law

#### 1.      Procedural Due Process

"To state a claim under § 1983 for deprivation of procedural due process rights, a

plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within

the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures

available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d

225, 233-34 (3d Cir. 2006) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). In

analyzing whether a deprivation has occurred, courts in this circuit instruct that "[e]mployee

resignations and retirements are presumed to be voluntary." *Symonies v. McAndrew*, 416 F.

Supp. 3d 377, 392 (M.D. Pa. 2019) (quoting *Leheny v. City of Pittsburgh*, 183 F.3d 220, 227 (3d

Cir. 1999)); *see also id.* ("[R]esignations can be voluntary even where the only alternative to

resignation is facing possible termination for cause . . . ." (citing *Hargray v. City of Hallandale*,

57 F.3d 1560, 1568 (11th Cir. 1995))). A resignation may be deemed "involuntary" and trigger

protections under the Due Process Clause "under only two circumstances: (1) when the employer

forces the employee's resignation or retirement by coercion or duress, or (2) when the employer obtains the resignation or retirement by deceiving or misrepresenting a material fact to the employee." *See id.* (citing *Leheny*, 183 F.3d at 228). In determining whether an employee was constructively discharged, the Third Circuit has instructed that Courts may consider factors, including but not limited to

> (1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; (4) whether the employee was permitted to select the effective date of the resignation; and (5) whether the employee had the advice of counsel.

*See Judge v. Shikellamy Sch. Dist.*, 905 F.3d 122, 125-26 (3d Cir. 2018) (citing *Hargray*, 57 F.3d at 1568).

Where an employee makes out a property interest in continued employment, he is owed "a pretermination opportunity to respond, coupled with [adequate] post-termination administrative [or judicial] procedures." *See Parker v. Faley*, 625 F. App'x 77, 81 (3d Cir. 2015) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547-48 (1985)). "In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin*, 227 F.3d at 116; *see also Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1982) ("[A] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them.").

### 2. Substantive Due Process

"To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey v. Street*, 523 F.3d 200,

219 (3d Cir. 2000) (citing *United Artists Theatre Cir., Inc. v. Township of Warrington, Pa.*, 316 F.3d 392, 400-02 (3d Cir. 2003)).  "[A] property interest must be constitutionally 'fundamental' in order to implicate substantive due process." *Dondero*, 431 F. Supp. 3d at 602 (quoting *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 141 (3d Cir. 2000)).  The "Third Circuit [has] explicitly held that public employment is not a fundamental property interest protected by substantive due process." *Id.* (citing *Nicholas*, 227 F.3d at 142-43; *Hill*, 455 F.3d at 234 n.12).

### D.    *Monell* Claim – Review of Applicable Law

"Local governing bodies . . . may be sued where 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Lebie v. Borough*, No. 13-cv-6819, 2014 WL 2085518, at *2 (E.D. Pa. May 16, 2014) (quoting *Monell*, 436 U.S. at 690).  "Liability is imposed when the policy or custom itself violates the Constitution, or where the policy or custom is the 'moving force' behind a constitutional violation by an employee of the local body." *Id.* (citing *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1027 (3d Cir. 1991)).

"A policy is made 'when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Id.* (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "A custom may exist when, 'though not authorized by law, such practices of state officials are so permanent and well settled that they operate as law.'" *Id.* (quoting *Regan v. Upper Darby Township*, 363 F. App'x 917, 923 (3d Cir. 2010)).  "Custom requires proof of knowledge and acquiescence by the decisionmaker." *Robinson v. City of Philadelphia*, Civ. A. No. 15-1574, 2015 WL 5965003, at *7 (E.D. Pa. Oct. 13, 2015) (quoting *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009)).

"It is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Id.* (quoting *Andrews*, 895 F.2d at 1481); *see also id.* (concluding Third Circuit case law "unequivocally imposes on [p]laintiff an 'obligation to plead in some fashion that [a natural person] had final policy making authority, as that is a key element of a *Monell* claim'" (quoting *Santiago v. Warminster Township*, 629 F.3d 121, 135 n.11 (3d Cir. 2010))).

### E.      Qualified Immunity – Review of Applicable Law

"Qualified immunity is not merely immunity from liability, but rather immunity from suit, operating to free the recipient from the burdens of litigation." *Muth v. Woodring*, 666 F. App'x 137, 138 (3d Cir. 2016) (citing *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014)). Accordingly, courts are to resolve questions of immunity at the "earliest possible stages of litigation." *See id.* at 138-39 (quoting *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002)) (noting district court appropriately considered immunity question at pleadings stage). Notwithstanding, "[a]s it is an affirmative defense, 'qualified immunity should only be granted on a motion to dismiss when it is established on the face of the complaint.'" *Morency v. City of Allentown*, No. 5:19-cv-5304, 2020 WL 1935640, at *14 (E.D. Pa. Apr. 22, 2020) (quoting *Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 126 (D.N.J. 2017)).

Questions of qualified immunity require a two-facet analysis. *See Muth*, 666 F. App'x at 139. The first "probes whether the allegations, '[t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a [federal] right[.]'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The second asks "whether the law was clearly established at the time of the violation." *Id.* (quoting *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d. Cir. 2010)). A law is clearly established if, "at the time of the challenged incident, [it]

is sufficiently clear to 'provide[ ] fair warning to the defendants that their alleged conduct was unconstitutional.'"  *See id.* (quoting *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014)).

Where a plaintiff fails to establish the underlying offense through his or her allegations, "there is no necessity for further inquiries concerning qualified immunity."  *See Saucier*, 533 U.S. at 201; *see also Fields v. City of Pittsburgh*, 714 F. App'x 137, 143 (3d Cir. 2017) ("[Plaintiff's] § 1983 claim fails and we need not consider the issue of qualified immunity." (citing *Saucier*, 533 U.S. at 201)).

## IV.   DISCUSSION

### A.   First Amendment Retaliation Claim

Errington first claims that Defendants impermissibly retaliated against him for engaging in speech protected by the First Amendment.  In order to make out a claim, Errington must first point to speech that is protected by the First Amendment.  In other words, Errington must first allege that he was speaking as a citizen on a matter of public concern.  *See Munroe*, 805 F.3d at 466 (quoting *Dougherty*, 772 F.3d at 987).  In his Amended Complaint, Errington points to seven instances of speech that he alleges he made as a citizen on a matter of public concern.  Each instance is analyzed below.

First, Errington alleges that he made a complaint to the FOP regarding Menges in October of 2019 on the encouragement of fellow officers.  *See* Am. Compl. ¶ 14.  However, the allegations begin and end there.  Errington does not allege what these complaints involved, only noting their relation to Menges' role as FOP President.  *See id.*  Accordingly, even if this Court were to assume that Errington engaged in this speech as a citizen, this sparse allegation provides no facts that would allow this Court to determine whether the speech involved a matter of public

concern.  Therefore, Errington fails to identify any speech in October of 2019 that is warranting of First Amendment protection.

Second, Errington alleges that on or around January 27, 2020, he voiced his concerns to Driesbach regarding Direct Order 2020-00001.  *See id.* ¶¶ 16-17.  Errington alleges that the speech involved his concern that "Tornielli was using Direct Order 2020-00001 to come after the *personal* conversation of VICE Investigators . . . ."  *See id.* ¶ 17.  Here, Errington fails to allege speech made as a citizen.  Indeed, the speech relates directly to an order that Errington received by virtue of his employment with the Reading Police Department.  *See id.* ¶ 16.  Instead, this speech appears to be a complaint made up the chain of command regarding a workplace duty or condition.  *See Morris*, 487 F. App'x at 39.  These sorts of internal complaints about the conditions and duties of employment are not protected by the First Amendment.  *See Dondero*, 431 F. Supp. 3d at 602 (quoting *Palardy*, 906 F.3d at 83).  Accordingly, because this speech was made up the chain of command and it squarely involved the duties and conditions of Errington's employment, this speech is not protected under the First Amendment.

Third, Errington alleges that he spoke with Ruiz regarding the Direct Order.  *See* Am. Compl. ¶ 18.  Here, Errington does allege that he went outside of the chain of command in making this complaint.  *See id.*  However, the speech involves the same subject matter as Errington's speech to Driesbach: Errington was complaining about the duties and conditions of his job, namely, to refrain from making comments that would reflect negatively on the Reading Police Department.  *See id.* ¶¶ 16, 18.  Thus, even though Errington's speech was made outside of the chain of command, the speech is a personal employment grievance regarding the conditions and duties of Errington's employment.  *See Munroe*, 805 F.3d at 467 (citing *Sanguigni*, 968 F.2d at 399); *see also Dondero*, 431 F. Supp. 3d at 602 (quoting *Palardy*, 906

F.3d at 83).  To be sure, Errington's allegations indicate that his concern was the use of the Direct Order against his own "personal conversations."  *See* Am. Compl. ¶ 17.  Accordingly, because this speech involved a personal employment grievance, it does not warrant protection under the First Amendment.

Fourth, Errington alleges that he again approached Driesbach on or about March 11, 2020 to discuss Tornielli's use of the Direct Order.  For the reasons already discussed above, Errington has failed to allege speech that warrants protection under the First amendment.

Fifth, Errington alleges that he spoke with this FOP representative in early May regarding his termination.  Here again, the allegations are sparse regarding the topic of speech, beyond its relation to Errington's termination.  Notwithstanding, the topic of Errington's termination is not a matter of public concern.  Rather, it is squarely a matter of private concern.  *See Warwas v. City of Plainfield*, 489 F. App'x 585, 589 (3d Cir. 2012) (concluding employee's complaint regarding disciplinary findings and termination was a "private personnel grievance, not a matter of public concern" (citing *Gorum*, 561 F.3d at 187)).  Accordingly, Errington fails to allege that this speech warrants protection under the First Amendment.

Sixth, Errington alleges that he met with human resources to discuss his termination.  As discussed immediately above, Errington's termination is not a matter of public concern.  Accordingly, Errington fails to allege speech that warrants protection under the First Amendment.

Seventh and finally, Errington alleges that in November of 2017 he complained to the FOP that he had been left off the ballot for re-election to union positions despite his nomination.  Even assuming *arguendo* that this speech is protectible by the First Amendment, Errington fails to allege the requisite causal link between the speech and the alleged retaliatory activity.  This

speech took place in November of 2017, and Errington retired in June of 2020.  *See* Am. Compl. ¶¶ 13, 34.  Accordingly, there is no unusually suggestive temporal proximity between the two events.  *See Falco*, 767 F. App'x at 313 (concluding "lapse of several years" between protected activity and alleged retaliation "fatally attenuates the causal connection between the two").  Errington makes no effort to allege that the election complaint was the cause of his allegedly forced retirement.[4]  Thus, Errington has failed to allege any causal connection between the speech made in November of 2017 and his eventual retirement in June of 2020.

Having reviewed all of the alleged speech in the Amended Complaint, this Court concludes that Errington has failed to state a claim for retaliation under the First Amendment.  Accordingly, this claim is dismissed without prejudice as to all Defendants.

> **B.     Procedural and Substantive Due Process Claims**

Errington next alleges that the Defendants violated the principles of both procedural and substantive due process in terminating him.  Notwithstanding, Errington fails to allege facts sufficient to make out a violation of either facet of due process.  Accordingly, this claim is dismissed as to all Defendants.

---

[4]     Errington does allege that his complaint to the FOP resulted in his removal from an instructor position at the police academy.  *See* Am. Compl. ¶ 13.  Notwithstanding, the limitations period has run on this claim.  Errington alleges in his Amended Complaint that his instructor role was revoked sometime around November of 2017.  *See* Am. Compl. ¶ 13.  "An action brought pursuant to Section 1983 is subject to the statute of limitations for personal injury actions in the state in which the claim arises."  *See Myers v. County of Somerset*, 515 F. Supp. 2d 492, 501 (D.N.J. 2007) (citing *O'Connor v. City of Newark*, 440 F.3d 125, 126 (3d Cir. 2006)).  In Pennsylvania, the relevant limitations period is two years.  *See* 42 Pa. Cons. Stat. § 5524.  Errington's removal from his instructor role occurred more than two years before he filed his Original Complaint on January 10, 2021.  Accordingly, this Court only reviews the possibility that Errington's speech in November of 2017 was a motivating factor in his ultimate retirement on June 8, 2020.

### 1.    Procedural Due Process

To make out a procedural due process claim, Errington must first allege that he was deprived of an individual interest protected by the Fourteenth Amendment. *See Hill*, 455 F.3d at 233-34.  In this case, Errington's retirement is presumed voluntary. *See Symonies*, 416 F. Supp. 3d at 392 (citing *Leheny*, 183 F.3d at 227).  To rebut this presumption, Errington must allege (1) that his retirement was obtained by coercion or duress, or (2) that it was obtained through the employer's misrepresentation of a material fact. *See id.*

When viewed in light of the factors provided by the Third Circuit, Errington's allegations indicate that his retirement was voluntary. *See Judge*, 905 F.3d at 125-26 (citing *Hargray*, 57 F.3d at 1568).  First, Errington was given alternatives to retirement, and the fact that one of those alternatives was possible termination for cause does not render the decision involuntary. *See Hargray*, 57 F.3d at 1568.  Specifically, Errington alleges that he had the options that included challenging his termination, s*ee* Am. Compl. ¶ 27, retiring with a pension, s*ee id.* ¶¶ 34, 36, or appealing his termination, *see id.*  Second, the allegations show that Errington understood the choice before him.  The allegations indicate that Errington weighed the option of challenging the charge for termination against him and the option of retiring without risking his pension. *See id.* ¶¶ 27, 36.  Third, Errington does not allege that he was given an unreasonable time frame for making this decision.  Errington alleges that he spoke with his FOP representative in May 2020 about fighting the termination. *See id.* ¶ 27.  It was not until June 8, 2020 that Errington retired. *See id.* ¶ 34; *see also Symonies*, 416 F. Supp. 3d at 393-94 (indicating that as little as seven hours was sufficient time in which to make a decision of this sort (citing *Rhoads v. Bd. of Educ. of Mad River Local Sch. Dist.*, 103 F. App'x 888, 895 (6th Cir. 2004))).  With respect to the last two elements, Errington does not allege any facts regarding whether he was permitted to select the

effective date of his retirement or whether he was advised by counsel during the process.

Accordingly, this Court does not weigh those final two factors.

At bottom, Errington has not met his burden to allege that his decision to retire was the product of coercion or duress.  Rather, Errington's allegations indicate that he was presented with choices that included challenging his termination, accepting his termination, appealing his termination, or retiring.  Because Errington has failed to allege facts sufficient to rebut the presumption, the presumption remains that Errington's decision to retire was voluntary, and accordingly, Errington has failed to allege a deprivation sufficient to sustain a procedural due process claim.

Moreover, assuming *arguendo* that Errington could show that his decision to retire was the product of coercion, he otherwise fails to state a due process claim.  In order to state a claim, a plaintiff must allege that he took advantage of the process available to him.  *See Alvin*, 227 F.3d at 116.  Although Errington indicates that procedures were available to him, his allegations indicate that he did not take advantage of them.  Foremost, Errington indicated to his FOP representative that he intended to challenge his termination.  *See* Am. Compl. ¶ 27.  Accordingly, the allegations establish that there was a process available to Errington by which he could have challenged his termination.  Notwithstanding, Errington does not allege that he made use of this process.  Moreover, the allegations bear out that there was an appellate or post-termination process available to Errington.  *See id.* ¶ 34.  Nevertheless, Errington admits in his allegations that he did not make use of the process.  *See id.*  Errington's conclusory allegation that the appellate process would have been "futile" is unavailing.[5]  *See id.*  Errington indicated in his

---

[5]     Errington alleges that he did not appeal his termination because Defendants did not provide him with a specific reason for his termination.  *See* Am. Compl. ¶ 34.  Notwithstanding, this allegation is contradicted by many of the other allegations in his Amended Complaint.  For

allegations that his decision to not appeal was motivated, at least in part, by his desire to retire without risking his pension. *See id.* ¶ 36.  Accordingly, because Errington failed to make use of the procedures available to him, he has failed to state a procedural due process claim.

### 2.    Substantive Due Process

To state a substantive due process claim, Errington must first establish deprivation of an interest protected by the substantive due process clause. *See Chainey*, 523 F.3d at 219 (citing *United Artists*, 316 F.3d at 400-02).  In other words, Errington must show he was deprived of a constitutionally protected fundamental interest. *See Dondero*, 431 F. Supp. 3d at 602.  The Third Circuit has explicitly held that public employment is not a constitutionally protected fundamental interest protected by the substantive due process clause. *See id.* (citing *Nicholas*, 226 F.3d at 142-43).

Here, the only deprivation that Errington alleges involves his interest in employment with the Reading Police Department.  As the Third Circuit has indicated, such an interest is not protected by the substantive due process clause.  Accordingly, Errington fails to state a claim under the Due Process Clause, and this claim is dismissed without prejudice.

---

example, Errington alleges that he was provided with charges for termination that specified "harassment" as one of the bases for termination. *See id.* ¶ 27.  In addition, Errington alleges that "Defendants interviewed two (2) people that did not have knowledge of Plaintiff's alleged wrongdoing." *See id.* ¶ 35.  Errington goes on to allege that "Defendants did not interview witnesses that would have exculpated Plaintiff." *See id.* ¶ 36.  It is unclear how Errington can allege that he was unaware of the specific basis for his termination while simultaneously alleging that he knew of witnesses that could exculpate him of the wrongdoing.  Accordingly, after weighing the allegations, Errington has failed to plausibly allege that he did not know of the basis for his termination.

C.     *Monell* **Claim**

To state a *Monell* claim, Errington must point to a policy or custom that worked a constitutional transgression.  *See Lebie*, 2014 WL 2085518, at *2 (citing *Colburn*, 946 F.2d at 1027).  In addition, Errington must allege a policymaker who is responsible for the policy or custom.  *See Robinson*, 2015 WL 596003, at *7 (quoting *Andrews*, 895 F.2d at 1481).

Here, however, Errington fails to allege this threshold element.  Errington has failed to allege who, if any of the individual Defendants named in the Amended Complaint, "had final policy making authority . . . ."  *See id.* (quoting *Andrews*, 895 F.3d at 135 n.11)  Moreover, even if Errington had alleged this threshold requirement, his Amended Complaint does not point to any specific policy that Defendants employed to Errington's constitutional detriment.

Furthermore, Errington fails to allege a custom.  A course of conduct only becomes a custom when it is "'so permanent and well settled' as to virtually constitute law."  *See Andrews*, 895 F.2d at 1480.  In addition, a plaintiff must allege "knowledge and acquiescence by the decisionmaker."  *See Robinson*, 2015 WL 596003, at *7 (quoting *McTernan*, 564 F.3d at 657).  Here again, Errington's allegations fall short.  First, Errington fails to allege a decisionmaker, let alone any knowledge or acquiescence on their behalf.  Moreover, the "customs" that Errington lists in his Amended Complaint are little more than a recast of the allegations that undergird the remainder of his claims.  Errington makes no effort to allege that these practices are permanent and well established, such that they would practically constitute law.  Accordingly, Errington's allegations fail to set forth a custom sufficient to sustain a *Monell* claim.

For these reasons, Errington's *Monell* claim is dismissed as against all Defendants.

**D.      Individual Capacity Claims and Claims against Police Department**

In his Amended Complaint, Errington asserts claims against Defendants Tornielli, Driesbach, and Menges in their official capacities.  In his response to Defendants' Motion to Dismiss, Errington concedes that these claims are duplicative of his *Monell* claim, and he withdraws them.  *See* Resp. 24.  Accordingly, Errington's official capacity claims are dismissed.

In addition, Errington concedes in his response that his claim against the "Reading Police Department" is duplicative of his *Monell* claim against the City of Reading.  *See id.*  Moreover, Errington clarifies that he is suing the "City of Reading, doing business as Reading Police Department."  *See id.*  Accordingly, the Reading Police Department is dismissed as a party to this suit.

**V.      CONCLUSION**

Following a review of the Amended Complaint, Errington has failed to allege facts sufficient to state a claim under any of the three counts he asserts.  With respect to Count I, Errington fails to state a claim for First Amendment retaliation.  With respect to Count II, Errington fails to allege a violation of either the procedural or substantive due process clause of the Fourteenth Amendment.  Finally, with respect to Count III, Errington fails to allege an individual with final decision making authority or a policy, practice, or custom that worked a constitutional transgression.  Accordingly, Errington's Amended Complaint is dismissed in its entirety as against all Defendants.  Since this Court determines that Errington fails to state a claim, it does not address the applicability of any qualified immunity defense raised by Defendants.  *See Saucier*, 533 U.S. at 201.

At this time, this Court cannot say whether permitting a curative amendment would be futile or inequitable. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile"). Accordingly, the dismissal of Errington's Amended Complaint is without prejudice. Errington is granted leave to amend his Amended Complaint to the extent that he can resolve the deficiencies described above.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge