UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OFFICER BRIAN ERRINGTON : | |
|     Plaintiff, : | |
| : | |
| v. : | No. 5:21-cv-00118 |
| : | |
| CITY OF READING, RICHARD : | |
| TORNIELLI, ERIC DRIESBACH, : | |
| CHARLES MENGES, and JOHN DOES : | |
| 1-10, : | |
|     Defendants. : | |

**O P I N I O N**
**Motion to Dismiss for Failure to State a Claim, ECF No. 14 – Granted**

**Joseph F. Leeson, Jr.**                                                                                 **December 22, 2021**
**United States District Judge**

**I.     INTRODUCTION**

This matter involves claims by Brian Errington against his former employer, the City of Reading, focused on the Reading Police Department, as well as several named and unnamed individuals in the department. Following this Court's grant of Defendants' first motion to dismiss, Errington filed his Second Amended Complaint ("Operative Complaint"). Therein, Errington asserts a single claim of First Amendment retaliation against Defendants. Defendants now move to dismiss the Operative Complaint in its entirety.

Following a review of the Operative Complaint, this Court grants Defendants' motion to dismiss. Errington fails to allege facts sufficient to state a claim of First Amendment retaliation. Accordingly, Errington's Operative Complaint is dismissed with prejudice.

## II.     BACKGROUND[1]

Errington was employed by the Reading Police Department for approximately fifteen years. *See* 2d Am. Compl. ¶ 1. His duties as part of the VICE investigations unit included investigation of narcotics sales and delivery and investigation of organized and violent crimes. *See id.* Errington alleges that the City of Reading, through the Reading Police Department, engaged in discriminatory acts involving Errington. *See id.* ¶ 11.

Errington alleges that the issues giving rise to his claims began in November of 2017. *See id.* ¶ 13. At that time, Errington was nominated to run for re-election for two positions in the Fraternal Order of Police ("FOP") union. *See id.* Despite his nomination, Defendant Sergeant Charles Menges left Errington's name off the ballot. *See id.* When Errington complained about his absence from the ballot, he was removed from his instructor position at the Reading Police Academy by Defendant Chief Richard Tornielli. *See id.* Errington alleges that his removal from this post was in retaliation for his complaints about being left off the ballot. *See id.*

On or about October 16, 2019, several individuals complained to Errington about Menges' conduct. *See id.* ¶ 14. At that time, Menges was president of the FOP union. *See id.* Errington's colleagues encouraged him to file a complaint with the FOP, and on October 16, 2019, Errington wrote a letter to the union complaining of the conduct. *See id.* As a result of the complaint, an investigation was conducted by the FOP. *See id.* ¶ 17. Errington alleges that Tornielli, who was implicated in one of the incidents complained of, was not interviewed as part of the investigation. *See id.*

---

[1]     The Background is taken, in large part, from allegations in Errington's Operative Complaint. *See* 2d Am. Compl., ECF No. 22.

In November of 2019, Tornielli wrote Errington up for discipline. *See id.* ¶ 22. The Chief of Police at that time did not move forward with any discipline against Errington. *See id.* In January of 2020, Tornielli was promoted to Acting Chief of Police, after which he reinstated discipline against Errington for the November 2019 write up. *See id.* Errington alleges that Tornielli disregarded the traditional practice of sending the complaint to the Internal Affairs Office, and instead, Tornielli sent the discipline down directly to Errington. *See id.* After Errington requested a meeting to discuss the discipline, Tornielli withdrew the main charge. *See id.*

On or about January 27, 2020, Defendant Lieutenant Eric Driesbach issued a memorandum entitled "Direct Order 2020-00001" to all Vice Investigators to sign. *See id.* ¶ 23. The Direct Order stated that no member of the Vice Investigators Unit "shall make any comment, remark, suggestion, or innuendo that would reflect negatively or poorly on the Reading Police Department or any member of the Reading Police Department while working in an official capacity as a police officer for the Reading Police Department." *See id.* Errington believed that this Direct Order was being used to "come after the personal conversations of the VICE Investigators," and accordingly, Errington voiced his concern to Driesbach. *See id.* ¶ 24. Errington alleges that Driesbach "did not appear to want to address [Errington's] worries about Direct Order 2020-00001." *See id.* ¶ 25.

Errington then expressed his concerns to Deputy Chief Javier Ruiz. *See id.* Ruiz indicated to Errington that the Direct Order was aimed at "Patrol Officers speaking in front of newly hired Officers and in front of civilians." *See id.* Ruiz reassured Errington that the Direct Order was not directed at private conversations.

On or about March 11, 2020, Tornielli promoted Menges to acting Sergeant. *See id.* ¶ 26. At that time, Menges had not taken the promotional exam and was not on the promotional list. *See id.* Errington was on the list and had taken the exam. *See id.* That same day, VICE investigators discussed their opinions of the promotion while in the VICE office. *See id.* ¶ 27. On or about March 12, 2020, Driesbach provided all VICE investigators a memorandum that indicated a complaint was received regarding a violation of Direct Order 2020-00001. *See id.* ¶ 29. The memorandum requested that each VICE investigator answer a series of questions about the March 11, 2020 discussions in the VICE office. *See id.* On March 12, 2020, Errington spoke with Driesbach again to express his concern that Tornielli was using Direct Order 2020-00001 to punish the personal conversations of the VICE investigators. *See id.* ¶ 30. Errington alleges that Tornielli instructed Driesbach to assist in terminating Errington. *See id.* ¶ 31.

On or about March 13, 2020, Errington was told to turn over his firearm and badge. *See id.* ¶ 33. He was told to report for administrative duty the following Monday. *See id.* On or about April 10, 2020, Errington learned that Tornielli was moving to have Errington terminated. *See id.* ¶ 34. According to Tornielli, Errington had lied in an internal affairs investigation, saying that "one of his fellow VICE Investigators was a snitch." *See id.*

In May of 2020, Errington informed his FOP representative that he intended on fighting his termination. *See id.* ¶ 35. Errington asked that the FOP not inform Menges of this decision; however, Errington's decision to challenge his termination did reach Menges and Tornielli. *See id.* After this, Errington was presented with new charges for termination in addition to those contained in the original charge. *See id.*

In June of 2020, Errington met with Human Resources to complain about the alleged harassment and retaliation. *See id.* ¶ 38. While speaking with Human Resources, Errington

became aware that Menges had spoken with Human Resources about bases for terminating him. *See id.* Errington alleges that Tornielli altered his reasons for terminating Errington based on the conversation that Menges had with Human Resources. *See id.* ¶ 39. Human Resources indicated that they were unable to investigate because Errington was already being investigated by the police. *See id.* ¶ 41.

On or about June 8, 2020, Errington alleges that he was "forced to retire." *See id.* ¶ 42. Errington alleges that he did not appeal his termination "because it would have been futile." *See id.* Errington further alleges that he "had no choice but to retire because he could not risk his pension while pursuing an appeal . . . ." *See id.* ¶ 44.

Based on these allegations, Errington filed a Complaint on January 10, 2021, alleging claims of First Amendment retaliation, violation of procedural and substantive due process, and *Monell* liability. *See* Compl., ECF No. 1. Errington filed an Amended Complaint on March 16, 2021. *See* Am. Compl. On August 31, 2021, this Court granted Defendants' motion to dismiss Errington's Amended Complaint. *See* Order 8/31/21, ECF No. 19. Thereafter, Errington filed a Second Amended Complaint ("Operative Complaint"), this time alleging a sole claim of First Amendment retaliation against Defendants. *See* 2d Am. Compl., ECF No. 22. Defendants now move to dismiss Errington's Operative Complaint. *See* Mot., ECF No. 23. Following a series of responses and replies, the motion is ready for review. *See* Resp., ECF No. 24; Reply, ECF No. 25.

III. **LEGAL STANDARDS**

  A. **Review of Motion to Dismiss**

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff."

*Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

    **B.    Section 1983 First Amendment Retaliation Claim – Review of Applicable Law**

A state "may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *Munroe v. Central Bucks Sch. Dist.*, 805 F.3d 454, 465 (3d Cir. 2015) (quoting *Rankin v. McPherson*, 483 U.S. 378, 383 (1987)). "Accordingly, public employees do not surrender all of their First Amendment rights merely

6
122221

because of their employment status." *Id.* (citing *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)). "Nevertheless, 'the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general.'" *Id.* (quoting *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty., Ill.*, 391 U.S. 563, 568 (1968)). Accordingly, a public employer "may impose speech restrictions that are necessary for efficient and effective operations." *Id.* at 466 (citing *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 987 (3d Cir. 2014)).

To make out a claim of retaliation under the First Amendment, the public employee must show, "(1) his speech is protected by the First Amendment and (2) the speech was a substantial or motivating factor in the alleged retaliatory action . . . ." *See id.* (citing *Dougherty*, 772 F.3d at 986). Where an employee alleges these two elements, the burden then shifts to the employer to show "the same action would have been taken even if the speech had not occurred." *See id.*

In order for speech to be considered "protected," three elements must be present:

(1) "the employee must speak as a citizen (and not an employee);"

(2) "'the speech must involve a matter of public concern;'" and

(3) "'the government must lack an adequate justification for treating the employee differently than the general public based on its needs as an employer under the Pickering balancing test.'" *See id.* (quoting *Dougherty*, 772 F.3d at 987). "When public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421; *see also Morris v. Phila. Housing Auth.*, 487 F. App'x 37, 39 (3d Cir. 2012) ("[C]omplaints up the chain of command about issues related to an

employee's workplace duties—for example, possible safety issues or misconduct by other employees—are within an employee's official duties.").

>  Speech implicates a public concern when
>
> it can be fairly considered as relating to any matter of political, social or other concern to the community, [*Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) ], or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public, [*City of San Diego v. Roe*, 543 U.S. 77, 83–84, 125 S.Ct. 521, 160 L.Ed.2d 410 (2004) (per curiam)].

*Munroe*, 805 F.3d at 467.  "[S]peech that relates solely to mundane employment grievances does not implicate a matter of public concern." *Id.* (citing S*anguigni v. Pittsburgh Bd. of Pub. Educ.*, 968 F.2d 393, 399 (3d Cir. 1992)); *see also Miller v. Clinton County*, 544 F.3d 542, 548 (3d Cir. 2008) (finding letter was not protected by First Amendment where it focused on plaintiff's private grievances as an employee, and any statements of public concern were tangential to the private grievance); *Dondero v. Lower Milford Township*, 431 F. Supp. 3d 590, 602 (E.D. Pa. 2019) ("[P]ersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest . . . are matters more immediately concerned with the self-interest of the speaker as employee." (quoting *Palardy v. Township of Millburn*, 906 F.3d 76, 83 (3d Cir. 2018))).

Once a plaintiff establishes that he was speaking as a citizen on a matter of public concern, the *Pickering* balancing test requires courts to weigh "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *See id.* at 466 (quoting *Dougherty*, 772 F.3d at 991).  This question of whether "speech is

protected by the First Amendment constitutes a question of law." *See id.* (citing *Miller*, 544 F.3d at 548).

Once a plaintiff alleges speech protected by the first amendment, he must then allege an adverse employment action that resulted from his protected speech. "[E]mployee resignations and retirements are presumed to be voluntary." *Symonies v. McAndrew*, 416 F. Supp. 3d 377, 392 (M.D. Pa. 2019) (quoting *Leheny v. City of Pittsburgh*, 183 F.3d 220, 227 (3d Cir. 1999)); *see also id.* ("[R]esignations can be voluntary even where the only alternative to resignation is facing possible termination for cause . . . ." (citing *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995))). A resignation may be deemed involuntary "under only two circumstances: (1) when the employer forces the employee's resignation or retirement by coercion or duress, or (2) when the employer obtains the resignation or retirement by deceiving or misrepresenting a material fact to the employee." *See id.* (citing *Leheny*, 183 F.3d at 228). In determining whether an employee was forced to retire, the Third Circuit has instructed that Courts may consider factors, including but not limited to

> (1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; (4) whether the employee was permitted to select the effective date of the resignation; and (5) whether the employee had the advice of counsel.

*See Judge v. Shikellamy Sch. Dist.*, 905 F.3d 122, 125-26 (3d Cir. 2018) (citing *Hargray*, 57 F.3d at 1568).

Having alleged protected speech and an adverse employment action, the plaintiff must next "show that his protected activity was a substantial or motivating factor" in the defendant's retaliation. *See Falco v. Zimmer*, 767 F. App'x 288, 310 (3d Cir. 2019). "To do so, he must show some sort of 'causal link' between the protected speech and the adverse employment action." *Id.* (citing *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003)). "[A]t

this motion to dismiss stage, [a plaintiff] must only produce some evidence, direct or circumstantial, of this element that is 'enough to raise the right to relief above the speculative level.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "[A] suggestive temporal proximity between the protected activity and the alleged retaliatory action can be probative of causation . . . ." *Id.* (quoting *Thomas*, 351 F.3d at 114). However, "[e]ven if timing alone could ever be sufficient to establish a causal link, . . . the timing of the alleged retaliatory action must be unusually suggestive of the retaliatory motive before a causal link will be inferred." *Id.* (quoting *Estate of Smith v. Mascaro*, 318 F.3d 497, 512 (3d Cir. 2003)).

      C.      **Qualified Immunity – Review of Applicable Law**

"Qualified immunity is not merely immunity from liability, but rather immunity from suit, operating to free the recipient from the burdens of litigation." *Muth v. Woodring*, 666 F. App'x 137, 138 (3d Cir. 2016) (citing *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014)). Accordingly, courts are to resolve questions of immunity at the "earliest possible stages of litigation." *See id.* at 138-39 (quoting *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002)) (noting district court appropriately considered immunity question at pleadings stage). Notwithstanding, "[a]s it is an affirmative defense, 'qualified immunity should only be granted on a motion to dismiss when it is established on the face of the complaint.'" *Morency v. City of Allentown*, No. 5:19-cv-5304, 2020 WL 1935640, at *14 (E.D. Pa. Apr. 22, 2020) (quoting *Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 126 (D.N.J. 2017)).

Questions of qualified immunity require a two-facet analysis. *See Muth*, 666 F. App'x at 139. The first "probes whether the allegations, '[t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a [federal] right[.]'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The second asks "whether the law was clearly

established at the time of the violation." *Id.* (quoting *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d. Cir. 2010)). A law is clearly established if, "at the time of the challenged incident, [it] is sufficiently clear to 'provide[ ] fair warning to the defendants that their alleged conduct was unconstitutional.'" *See id.* (quoting *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014)).

Where a plaintiff fails to establish the underlying offense through his or her allegations, "there is no necessity for further inquiries concerning qualified immunity." *See Saucier*, 533 U.S. at 201; *see also Fields v. City of Pittsburgh*, 714 F. App'x 137, 143 (3d Cir. 2017) ("[Plaintiff's] § 1983 claim fails and we need not consider the issue of qualified immunity." (citing *Saucier*, 533 U.S. at 201)).

## IV. DISCUSSION

Errington's Operative Complaint raises a single claim of First Amendment retaliation against Defendants. In order to state a claim, Errington must first allege speech that is protected by the First Amendment. Then, Errington must allege some causal link between his protected speech and an adverse employment action. In other words, Errington must sufficiently allege that his protected speech was a motivating factor in the adverse employment action that he experienced.

For the first time in his Operative Complaint, Errington includes a letter that he alleges he sent to the FOP on October 16, 2019, regarding Menges' conduct.[2] Errington alleges that this letter involves speech protected by the First Amendment. Notwithstanding, even if this Court assumes that Errington has alleged some protected speech in this letter, Errington fails to sufficiently allege an adverse employment action or requisite causal link.

---

[2] The other instances of alleged protected speech that this Court reviewed in its prior Opinion remained largely unamended in the Operative Complaint.

Once a plaintiff alleges speech protected by the First Amendment, he must next allege an adverse employment action and draw a causal link between that action and his protected speech. *See Falco*, 767 F. App'x at 310. Here, Errington fails to sufficiently allege that he suffered an adverse employment action after he engaged in protected speech. Errington alleges two events that he claims constituted adverse employment actions that are causally related to his speech. Both events are reviewed in turn below. In summary, Errington fails to allege an adverse employment action sufficient to sustain his claim. Moreover, even assuming the existence of an adverse action, Errington fails to causally connect it to his speech.

A.   **Errington's Discipline in November 2019**

Errington attempts to alleges that his "discipline" in November of 2019 constitutes an adverse employment action. Notwithstanding, this event does not rise to the level of an adverse employment action sufficient to sustain a retaliation claim. The Supreme Court defines an adverse employment action as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits." *See Clark v. Phila. Housing Auth.*, 701 F. App'x 113, 117 (3d Cir. 2017) (quoting *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 749 (1998)); *see also Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir. 2001) (finding written reprimands were not adverse employment actions sufficient to sustain a retaliation claim).

Here, Errington generally alleges that he was written up for discipline in November of 2019 by Tornielli in relation to an "alleged incident." *See* 2d Am. Compl. ¶ 22. Errington fails to allege what incident gave rise to the write-up, nor does he allege what discipline was handed down. However, Errington does allege that the main charge for discipline was dismissed. *See id.* This written reprimand does not rise to the level of an adverse employment action, especially

considering that the main charge was dismissed. Accordingly, Errington fails to allege that this event amounted to a significant change in employment status, and therefore, the alleged discipline does not constitute an adverse employment action.

**B.      Errington's Retirement on June 8, 2020**

Errington primarily asserts that his retirement constitutes an adverse employment action, insofar as he was forced into retirement. As this Court indicated in its prior Opinion, retirements are generally presumed voluntary. *See Symonies*, 416 F. Supp. 3d at 392 (citing *Leheny*, 183 F.3d at 227). To rebut this presumption, Errington must allege that either (1) his retirement was forced via coercion or duress, or (2) his retirement was obtained via deception by his employer. *See id.* Here, Errington fails to plausibly allege that he was coerced or deceived into retirement.

Errington alleges that he retired on or about June 8, 2020. *See* 2d Am. Compl. ¶ 42. In its prior Opinion, this Court noted that Errington alleged that he was given a choice between retiring with a pension, challenging the pending termination proceedings against him, or appealing an ultimate decision to terminate him. *See* Op. 8/31/21 at 17–18. Moreover, the allegations indicated that Errington understood the choice before him, as he indicated that he chose retirement after weighing that option against his right to challenge the termination. *See id.* Finally, Errington did not allege that he was forced to make his decision in an unreasonable amount of time. *See id.* Accordingly, this Court concluded that Errington's allegations failed to rebut the presumption that his retirement was voluntary. *See id.*

Errington's Operative Complaint adds no new factual allegations that would alter this analysis. None of the new allegations indicate that Errington's decision to retire was the product

of coercion or duress, nor does Errington allege that he was deceived into retiring.[3]  Accordingly, Errington has failed to set forth allegations sufficient to rebut the presumption that his retirement was voluntary.  Since that presumption stands, Errington has failed to allege that his retirement from the Reading Police Department constituted an adverse employment action.

Even assuming that Errington sufficiently alleged that his retirement was an adverse employment action, Errington fails to allege the requisite causal connection between his engagement in protected speech and his retirement.  To make out this causal link, a plaintiff may allege an "unusually suggestive" temporal proximity between the protected speech and adverse action.  *See Falco*, 767 F. App'x at 310 (citing *Estate of Smith*, 318 F.3d at 512).  In his response to the present motion, Errington asserts that he has alleged a temporal proximity that is suggestive of retaliation.

A review of the Operative Complaint shows that Errington has failed to make out the requisite causal connection.  The alleged protected speech, Errington's letter to the FOP, took place on October 16, 2019.  Errington alleges that he retired on or about June 8, 2020, over seven months after he wrote the letter.  This temporal proximity, without more, is not unusually suggestive of retaliation.  *See LeBoon v. Lancaster Jewish Community Ctr.*, 503 F.3d 217, 233 (3d Cir. 2007) ("[A] gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation . . . ." (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001))).

Errington alleges that he experienced a "pattern of antagonism" sufficient to support the causal link between his speech and his retirement.  However, Errington's allegations fall short

---

[3]  Errington's lone conclusory allegation that he was "forced" to retire does not carry his burden to allege facts sufficient to render the adverse action plausible.  *See* 2d Am. Compl. ¶ 42.

here as well.  In attempting to draw a connection between his speech and his ultimate exit from the department, Errington points to speech that he engaged in after his October 2019 letter to the FOP but before his retirement.  Errington suggests that the Department's reaction to this intervening speech suggests retaliatory motive.

This Court reviewed this speech in its prior Opinion and determined that it was unprotected by the First Amendment.  Errington's Operative Complaint does not amend the allegations related to these instances of unprotected speech in any meaningful way.  Importantly, the alleged intervening speech involves topics not discussed in Errington's October 2019 letter.  Errington's allegations of intervening, unprotected speech on unrelated topics cuts against the plausibility of a causal connection between the October 2019 speech and Errington's retirement in June 2020.  Accordingly, Errington fails to plausibly allege a pattern of antagonism related to the October 2019 letter, and therefore, Errington has failed to make out the requisite causal connection between his speech and his eventual exit from the department.

V.     **CONCLUSION**

Assuming that Errington's Operative Complaint sets forth speech protected by the First Amendment, he fails to set forth an adverse employment action or otherwise allege a plausible causal link between his speech and an employment action.  Accordingly, Errington's sole claim of First Amendment retaliation is dismissed.  Because Errington fails to plausibly state a claim, this Court does not reach the issue of qualified immunity.  *See Saucier*, 533 U.S. at 201; *Fields*, 714 F. App'x at 143.

Moreover, this dismissal is one with prejudice, as to permit another amendment would be to work an inequity against Defendants.  *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to

12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile"). Errington has had two separate opportunities to amend his Complaint to state a claim. In dismissing Errington's First Amended Complaint, this Court specifically indicated that Errington had failed to rebut the presumption that his termination was voluntary. Despite notice, Errington failed to plead any new facts in his Second Amended Complaint that would cure the deficiencies outlined by this Court regarding his retirement. *See Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144-45 (3d Cir. 2002) ("A District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them."). For the reasons discussed above, and in light of Errington's two prior opportunities to amend, it would be inequitable to allow Errington further leave to amend his First Amendment retaliation claim.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge